**T. J. WHITE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1163.**

United States District Court
W. D. Tennessee, E. D.

Sept. 1, 1959.

Robert B. Mangum (of Harbert & Mangum), Savannah, Tenn., for plaintiff, T. J. White.

Edward N. Vaden, Asst. U. S. Atty., Memphis, Tenn., for defendant.

BOYD, District Judge.

### Findings of Fact, Conclusions of Law and Order for Judgment

This action arose as the result of a determination by the Tennessee State Agricultural Stabilization and Conservation Committee that one T. J. White of Saltillo, Hardin County, Tennessee, the plaintiff herein and a producer under a Soil Bank Conservation Reserve Contract, had violated said contract in that part of his conservation reserve had been "knowingly and willfully grazed".

The State Committee further determined, not only that the annual payment under a part of the contract, in the amount of Ninety ($90.00) Dollars, should be forfeited and refunded, but also that a civil penalty should be assessed in the amount of One Thousand, Three Hundred and Sixty-six Dollars and Eighty-one Cents ($1,366.81). The plaintiff, T. J. White, now brings this action pursuant to the Soil Bank Act of 1956, § 107(d), 70 Stat. 191, 7 U.S.C.A. § 1831(d) for judicial review and a trial de novo of said determination of the State Committee.

Wherefore, upon briefs and argument of counsel and upon the testimony and other evidence presented at a hearing before this Court, sitting without a jury, the Court makes the following:

### Findings of Fact

1. The plaintiff is a farmer and cotton ginner residing in Saltillo, Hardin County, Tennessee.

2. The defendant, the United States of America, administers, through its agents, the State and County Agricultural Stabilization and Conservation Committees, a nation-wide agricultural program popularly known as the Soil Bank Program. Under this program, the defendant, in effect, leases surplus acreages from land owners and farmers for the purpose of holding said acreages in reserve and taking them out of the production of certain agricultural commodities for a period of time.

3. In compliance with the Soil Bank Program, the plaintiff and the defendant, through its agent, the Hardin County, Tennessee Agricultural Stabilization and Conservation Committee, entered into a conservation reserve contract on or about June 12, 1957, whereby the plaintiff agreed, in return for a stated consideration, to establish certain cover crops on designated acreages and not to use said acreages for any other purpose for a period of three years. This contract covered approximately 182 acres of the plaintiff's land located in Hardin County, Tennessee. Of this 182 acres under contract, a single tract of approximately 29.2 acres designated Tract No. 22, is all that is involved in the present action.

4. Pursuant to this contract, in late October 1958, approximately nine (9) acres of the field here in question were seeded in fescue and white clover.

5. On or about December 1, 1958, a tree blew across a fence that enclosed a non-conservation pasture belonging to the plaintiff and allowed some thirty or forty head of cattle which were confined therein to scatter and wander away from said pasture and into an adjoining bottom land.

6. In gathering up the escaped cattle, several employees of the plaintiff, without the plaintiff's knowledge, confined a few head on Tract No. 22, it being the only enclosure in which running water was available other than the field from which the cattle had escaped. The following day, the plaintiff learned that the reserve field was so being used to confine the cattle until they all could be recaptured. He then consented to this arrangement for enclosure purposes only and without the intention of using said field for grazing.

7. For a period of approximately two weeks in early December of 1958, the remaining cattle were turned on Tract No. 22, a few at a time, as they were recaptured.

8. During said period no stand of fescue or white clover had yet come up on the field here in question. Other parts of said field had been plowed and harrowed to prepare for future seeding and still other acreage thereon had some cover of wild dead grass which was not suitable for feeding or grazing. It is apparent, therefore, that these cattle received no nutritional benefit whatever from Tract No. 22 on which they were temporarily confined.

9. During the period in question, the cattle confined on Tract No. 22 were fed entirely by a mixture of hay and soybean meal which was delivered daily to

feeding troughs placed in the field for this purpose.

10. The Hardin County Committee visited the field here in question on or about January 22, 1959, it previously having received a report of a violation of the conservation reserve contract. Its report shows only that approximately three acres of said field noticeably were affected or damaged by trampling. Said Committee further found that there was no cover on the field possible of being grazed and ordered the plaintiff to re-seed said reserve at his own expense. The plaintiff later complied with this order.

11. A hearing subsequently was held before the State Committee, at which time the plaintiff admitted full responsibility for the cattle being on the reserve but stated that his intent was only to use the field as an enclosure until such time as all the cattle could be rounded up and placed back in the permanent pasture. However, the State Committee, under date of June 4, 1959, determined that the producer had violated the conservation reserve contract in that the conservation reserve was "knowingly and willfully grazed". Accordingly, the State Committee held that a penalty for damages should be assessed against this plaintiff in the amount of Ninety ($90.00) Dollars and, further, that a civil penalty should be assessed against this plaintiff in the amount of One Thousand, Three Hundred and Sixty-six Dollars and Eighty-one Cents ($1,366.81), this amount being 50% of the payments due the plaintiff under the entire reserve contract.

*Conclusions of Law*

I.

This Court has jurisdiction of the parties and of the subject matter herein. Soil Bank Act of 1956, § 107(d), 70 Stat. 191, 7 U.S.C.A. § 1831(d).

II.

The action of a State Agricultural Stabilization and Conservation Committee in assessing a civil penalty pursuant to § 123 of the Soil Bank Act of 1956, is reviewable de novo by the District Court of the district wherein the land in question is located. Soil Bank Act of 1956, § 107(d), 70 Stat. 191, 7 U.S.C.A. § 1831(d).

III.

The civil penalty required by § 123 of the Soil Bank Act of 1956, shall be assessed in addition to any amounts required to be forfeited or refunded under the contract. Therefore, where there are not sufficient grounds for termination or forfeiture of the contract, there are not sufficient grounds for assessment of the civil penalty. Soil Bank Act of 1956, § 123, 70 Stat. 198, 7 U.S. C.A. § 1811, Maxwell v. Benson, D.C. D.Iowa 1959, 173 F.Supp. 75.

IV.

In order to warrant forfeiture or termination of a reserve contract, there must be a violation of said contract by the producer that is so serious as to defeat or substantially impair its purpose. Soil Bank Act of 1956, § 107(a) (6) and (d), 70 Stat. 191, 7 U.S.C.A. § 1831(a) (6) and (d), Maxwell v. Benson, D.C.D.Iowa 1959, 173 F.Supp. 75, Inman v. United States, D.C.D.Tex.1959, 172 F. Supp. 841.

V.

The Court finds, as a matter of law, that the violations shown in the present case are slight and trivial and, therefore, not so substantial as to warrant termination or forfeiture of the reserve contract in question herein and, a priori, not so substantial as to warrant assessment of the civil penalty provided for in § 123 of the Soil Bank Act of 1956. See, by way of analogy, Maxwell v. Benson, supra, and Inman v. United States, supra.

Accordingly, judgment hereby is entered that the penalty of One Thousand, Three Hundred and Sixty-six Dollars and Eighty-one Cents ($1,366.81) was assessed improperly against the defendant herein, T. J. White, and this case is remanded to the Tennessee State Agri-

**594**

cultural Stabilization and Conservation Committee for further proceedings not inconsistent with this opinion.

### Order for Judgment

Judgment shall be entered in accordance with the foregoing Findings of Fact and Conclusions of Law within three days.